UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

H.J.,

Petitioner,

v.

JULIO HERNANDEZ, *et al.*,

Respondents.

CASE NO. 2:26-cv-02384-GJL

ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Petitioner H.J.[1] was detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, when she initiated this action. Dkt. 1. During the pendency of these proceedings, however, ICE released Petitioner from physical custody and placed her under new conditions of supervision. *See* Dkt. 11. On July 12, 2026, Petitioner, through counsel, filed an Amended Petition for writ of habeas corpus under

[1] In both the initial habeas Petition and Amended Petition, Petitioner seeks to proceed under a pseudonym. *See* Dkt. 1 at 3–4; Dkt. 11 at 6–7. Respondents have not asserted any opposition to this request. *See* Dkts. 8, 16. As such, H.J. is permitted to proceed under a pseudonym. There is no prejudice to Respondents as H.J has disclosed her identity to them and the prejudice to the public is limited. Thus, the Court finds H.J.'s need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity. *Does I through XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). However, as the parties do refer to Petitioner's country of citizenship by name in their filings, the Court will not refer to Sierra Leone as "Country A," as proposed by Petitioner. Dkt. 1 at 3; Dkt. 11 at 6.

28 U.S.C. § 2241.[2] Dkt. 11. The Amended Petition challenges conditions imposed following Petitioner's release from detention and seeks relief associated with her conditions of release and future removal decisions. *Id*. The Amended Petition has been fully briefed. Dkts. 11, 16, 18.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Amended Petition and **ORDERS** relief as set forth in the conclusion below.

## I. BACKGROUND

Petitioner is a native and citizen of Sierra Leone who entered the United States in August 2012 on a nonimmigrant student visa. Dkt. 9 ¶¶ 4–5; Dkt. 10-1 at 2, Ex. 1. Petitioner's status expired on or around December 2013. Dkt. 9 ¶ 6; Dkt. 10-1 at 2, Ex. 1.

On August 5, 2020, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), charging Petitioner as inadmissible pursuant to Section 237(a)(1)(C)(i) of the Immigration and Nationality Act ("INA"), in that Petitioner failed to maintain or comply with the conditions of the nonimmigrant status under which she was admitted. Dkt. 10-1 at 2, Ex. 1. On April 13, 2021, an Immigration Judge ("IJ") sustained the charge of removability. Dkt. 9 ¶ 9.

On December 17, 2024, an IJ ordered Petitioner removed from the United States to Sierra Leone, but also granted Petitioner withholding of removal to Sierra Leone. Dkt. 10-2, Ex. 2. As both parties waived appeal of the IJ's decision, the order of removal became final on December 17, 2024. Dkt. 9 ¶ 10; Dkt. 10-2 at 6, Ex. 1.

According to Petitioner, prior to the grant of withholding of removal, Petitioner received authorization to work in the United States. Dkt. 11 ¶ 9. She has substantial connections to the United States, including long-term employment at a memory care facility for elderly persons,

[2] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 4.

and a son and brother who are U.S. citizens. *Id*. ¶ 12. Further, from the record it appears Petitioner was placed on an Order of Supervision ("OSUP") on or around July 7, 2025. *See* Dkt. 10-3, Ex. 3 (Notice of Revocation of Release). Petitioner asserts that Respondents placed her on an annual check-in schedule, although it is not clear when this condition was imposed. Dkt. 11 ¶ 9; *see also* Dkt. 19 ¶ 2 (H.J. Dec.) ("Before I was arrested at my ICE check-in on July 6, 2026, I was checking in once a year with ICE."). Petitioner further asserts she has always complied fully with the terms of her release, and she maintains no criminal record. *Id*.

On July 6, 2026, Petitioner appeared for a scheduled check-in at the ICE Office in Portland, Oregon. Dkt. 9 ¶ 11. At that time, Petitioner received written notice that her OSUP was being revoked because she had been approved for third-country removal, and that her case was under review for removal to Ghana. Dkt. 10-3 at 2–3, Ex. 3. Petitioner was afforded an informal interview and permitted to submit a written statement. *See* Dkt. 10-3 at 4, Ex. 3. In the statement, Petitioner does not express fear of removal to a third county, but she did state, among other things, that she has not committed any crime and that the revocation "surprised me because I wasn't expecting this." *Id*. Petitioner also claimed that she has never had the opportunity to apply for asylum or withholding of removal to Ghana. Dkt. 11 ¶ 11.

Subsequently, Respondents assert a custody redetermination was conducted and Petitioner was ordered detained on July 6, 2026, for purposes of effecting third country removal. Dkt. 9 ¶ 11. Petitioner was transferred to NWIPC that day. *Id*. ¶ 12.

On July 8, 2026, Petitioner initiated this action while detained at NWIPC with the filing of a habeas Petition. Dkt. 1. On that same day, Petitioner also moved for a Temporary Restraining Order ("TRO") to prevent her removal or transfer out of this District and for the reopening of her removal proceedings. Dkt. 2. The Court provisionally granted the requested

relief to preserve the status quo and directed Respondents to respond. Dkt. 5. In a Response filed on July 10, 2026, Respondents notified the Court that Petitioner had been released from the NWIPC on July 10, 2026. Dkt. 8 at 2–3. Petitioner's release was subject to an OSUP with Alternatives to Detention ("ATD") reporting requirements, including a GPS ankle monitor and directions to report for a subsequent check-in at the Portland ICE Office on July 17, 2026. Dkt. 9 ¶ 13; Dkt. 11 ¶¶ 17–18. Respondents have not provided a copy of this OSUP for the Court's consideration. *See docket*.

On July 12, 2026, Petitioner filed an Amended habeas Petition. Dkt. 11. In the Amended Petition, Petitioner challenges the July 6, 2026, revocation of her OSUP and subsequent re-detention, as well as the conditions imposed following her release from the NWIPC and the possibility of removal to a third country. Dkt. 11. Petitioner seeks relief associated with her conditions of release and future removal decisions. *Id*. at 24–25.

Respondents filed a Response, arguing Petitioner's request for release from physical custody is moot, but otherwise the conditions of her release are lawful. Dkt. 16 at 4–6. Respondents further contend that Petitioner's claims regarding the circumstances she may face upon third-country removal to Ghana are speculative and must fail. *Id*. at 6–7. And lastly, Respondents argue that because removal to Ghana is supported by credible diplomatic assurances that an individual such as Petitioner would not be tortured, Petitioner is not entitled to an order requiring automatic reopening of removal proceedings as well as notice and an opportunity to be heard before third country removal. *Id*. at 7–9.

In her Traverse, Petitioner notifies the Court that ICE has removed her ankle monitor, but she remains on check-in conditions that are stricter than those in place before she was detained. Dkt. 18 at 1–2; *see also* Dkt. 19 (H.J. Dec.). Prior to her re-detention, Petitioner was required

only to check-in annually with ICE. Dkt. 11 ¶ 9. Under the new conditions, Petitioner is required to check in by phone weekly, and attend frequent home and in-person appointments at an ICE Office that prevent her from taking her child to school and going to work. *See* Dkt. 19. Petitioner contends that Respondents violated her due process rights by imposing these stricter release conditions without any individualized review, justification for those conditions, or meaningful opportunity to challenge them. *Id*. at 12–16. Also in the Traverse, Petitioner continues to challenge any future removal decisions. *Id*. at 3–12.

## II. HABEAS STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, petitioners have the burden of demonstrating that there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

Here, Petitioner challenges the legality of her remaining conditions of supervision, most notably strict and more burdensome check-in requirements which Respondents allegedly imposed without individualized assessment, justification, or meaningful opportunity to challenge. Dkt. 11 at 23–24; Dkt. 18 at 12–16. Petitioner seeks two forms of relief. First, Petitioner seeks an order requiring Respondents to release Petitioner on the same conditions that applied to her before she was re-detained on July 6, 2026. Dkt. 11 at 25. Second, Petitioner seeks

an order enjoining Respondents from removing her to any third country, and in particular a third country where it is more likely than not that she would subsequently be repatriated to Sierra Leone, without legally required notice and process. *Id.* at 24–25. Respondents oppose both requests for relief. *See* Dkt. 16.

**A. Petitioner Remains "In Custody" for Purposes of Her Habeas Challenge**

Petitioner first argues the conditions of her supervision, including the previous requirement that she wear an ankle monitor and current condition that she adhere to strict reporting requirements, render her "in custody" for the purposes of her habeas challenge. Dkt. 11 at 23–24; Dkt. 18 at 1–5. In their Response, Respondents agree that because Petitioner "remains under restrictive conditions of supervision and faces the possibility of future removal, the Court retains jurisdiction over the habeas petition." Dkt. 16 at 4.

A court may grant habeas corpus relief to any individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has "very liberally construed the 'in custody' requirement." *Maleng v. Cook*, 490 U.S. 488, 492 (1989). This liberal construction provides that "[a] person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to 'restraints not shared by the public generally.'" *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019) (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)).

Here, it is undisputed that Petitioner remains under restrictive conditions of supervision and potentially faces future removal. Dkt. 11 at 1–2; Dkt. 16 at 4; Dkt. 18 at 1–5. As these restrictions is not shared by the public generally, the Court concludes that Petitioner is "in custody" for purposes of seeking habeas corpus relief. *See Palacio v. Hermosillo*, No. C25-1983-RSM-MLP, 2025 WL 4033287, at *2 (W.D. Wash. Dec. 22, 2025), *report and recommendation*

*adopted sub nom.; Quiva Palacio v. Wamsley*, No. C25-1983-RSM-MLP, 2026 WL 84930 (W.D. Wash. Jan. 12, 2026) (remaining conditions imposed on a released petitioner continue to present a live controversy).

**B. Petitioner's Continued Restraint Violates Due Process**

Next, Petitioner contends that Respondents violated her due process rights by imposing new and stricter release conditions without any individualized review, justification for the conditions, or meaningful opportunity to challenge them. In addressing this challenge, the Court must determine what process is due when ICE imposes a new restraint on liberty and, subsequently, whether Respondents violated such process by imposing new restraints.

Procedural due process requires that individuals be afforded meaningful notice and an opportunity to be heard before deprivation of a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention contexts. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025) (collecting cases). The test weighs (1) the private interest affected; (2) the risk of erroneous deprivation under current procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Mathews*, 424 U.S. at 335; *see also Palacio*, 2025 WL 4033287, at *2–3 (applying *Mathews* to ICE's imposition of GPS monitoring requirement, finding due process violation, and ordering release from the condition).

1. Private Interest

The first *Mathews* factor considers the private interest affected by the challenged governmental action. *Mathews*, 424 U.S. at 335. Here, although Petitioner is no longer physically detained at the NWIPC, the conditions of her release nevertheless constitute an elevated burden

on her liberty interest. The Supreme Court has long recognized that the Due Process Clause protects not only freedom from incarceration but also freedom from "*other forms of physical restraint*." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting that physical restraint "lies at the heart of the liberty that Clause protects") (emphasis added). And while the conditions of Petitioner's release, as a whole, are considerably less severe than physical detention, they nevertheless constitute a substantial deprivation of liberty. *See Palacio*, 2025 WL 4033287, at *2 (citing *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (allowing petitioner to remain in the community for over five years strengthens the petitioner's liberty interest)). Accordingly, this factor weighs in Petitioner's favor.

2. Risk of Erroneous Deprivation

The second *Mathews* factor considers "the risk of an erroneous deprivation" under the procedures used and the probable value of additional procedural safeguards. *Mathews*, 424 U.S. at 335. This factor also favors Petitioner.

From the record, it appears Petitioner was placed on an OSUP in July 2025. *See* Dkt. 10-3, Ex. 3. While not clear from the record, at some point prior to her July 6, 2026, re-detention, Respondents required annual check-ins with ICE as the only condition of her release. Dkt. 11 ¶ 9; Dkt. 19 ¶ 2. At her July 6, 2026, arrest, Respondents revoked Petitioner's OSUP and provided an informal interview to allow her the opportunity to respond to the reasons for revocation. Dkt. 10-3 at 2–4, Ex. 3. When she was released four days later on July 10, 2026, Respondents imposed new conditions of supervision, including strict and burdensome check-in requirements that were not present prior to her July 6, 2026, arrest. Dkt. 9 ¶ 13; Dkt. 11 ¶¶ 17–18. There is nothing in the record showing there had been an assessment supporting a change to her conditions of release, such as whether she now presented as a flight risk or danger to the

community. Nor is there a showing that Petitioner had a way to administratively challenge or appeal the most recent OSUP conditions of release. In fact, the order of release for Petitioner is not even in the record.

Respondents assert the Government is entitled to adjust conditions of supervision based on changed circumstances, citing case law in support of this discretion as well as applicable regulatory requirements outlined in 8 C.F.R. § 241.5. Dkt. 16 at 5. However, courts have granted habeas relief from conditions imposed arbitrarily. *See Diallo v. Scott*, No. 2:26-cv-00975-GJL, 2026 WL 1843102, at *5–8 (W.D. Wash. June 26, 2026) (ICE imposed GPS monitoring and other conditions on petitioner with no notice of reasons or opportunity to challenge); *Palacio*, 2025 WL 4033287, at *3 (lack of opportunity to appeal or review GPS monitoring condition increased risk of erroneous deprivation); *N-N- v. McShane*, No. 25-5494, 2025 WL 3143594, at *4 (E.D. Pa. Nov. 10, 2025) (ICE not permitted to add electronic monitoring, after immigration judge had set release conditions, without utilizing the administrative appeal process).

Moreover, the high risk of erroneous deprivation resulting from the lack of process afforded to Petitioner is supported by the record in this case. In particular, before the events giving rise to the Amended Petition, Petitioner had been released on an OSUP with only an annual check-in requirement, and had been living and working in the community for more than thirteen (13) years. Dkt. 11 ¶¶ 9, 11. Such a release necessarily reflects a prior determination that Petitioner did not present a danger to the community and was likely to appear for future proceedings. *See Espinoza Palacios v. Hermosillo*, No. 2:26-CV-491-JNW, 2026 WL 686138, at *10 (W.D. Wash. Mar. 11, 2026) (citing 8 C.F.R. § 1236.1(c)(8)). Respondents do not dispute this determination was likely made, but seem to suggest that changed circumstances, such as approval for third-country removal, justify the additional conditions they imposed without

affording any further process. *Palacio*, 2025 WL 4033287, at *3 ("[T]he government [previously] found Petitioner should be released without an ankle monitor. Respondents have not shown a new flight risk, danger to the community, or any other reason for electronic monitoring, nor have they shown any burden in providing a hearing."). However, Respondents fail to show how this change in circumstance automatically justifies these additional conditions, especially in light of their repeated (and unsupported) assertion that Petitioner's removal is not imminent. *See* Dkt. 16 at 2, 3, 5.

Under these circumstances, the stricter release conditions appear to have been imposed arbitrarily without regard to assessing Petitioner's flight risk or danger to the community. Without such an assessment, the risk of erroneous deprivation of Petitioner's liberty interest is high. Accordingly, the second *Mathews* factor favors Petitioner.

3. Government's Countervailing Interest

The third *Mathews* factor considers countervailing government interests, including the administrative burden associated with additional procedural safeguards. *Mathews*, 424 U.S. at 335. Respondents assert no governmental interest in their briefing. *See* Dkt. 16. Nevertheless, the Court acknowledges there are strong governmental interests in the efficient administration of immigration laws, including those regarding detention of noncitizens. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). But the relevant question is not whether Respondents have a general interest in supervising Petitioner or in ensuring her presence for any future removal. Rather, the question is whether Respondents have an interest sufficient to justify Petitioner's restraint *without* any individualized review, notice of the reasons for the restraint, or meaningful opportunity for Petitioner to challenge the conditions of her release.

On the current record, the Court finds that Respondents do not. Respondents have not shown that Petitioner presents a particularized risk of flight, poses a danger to the community, or engaged in conduct warranting heightened supervision. *Francois v. Wamsley*, No. C25-2122-RSM-GJL, 2025 WL 3063251, at *5 (W.D. Wash. Nov. 3, 2025) (third *Mathews* factor weighs in petitioner's favor where respondents failed to show flight risk, danger, or any burden due to hearing). Nor have Respondents identified any administrative burden associated with providing notice of the reasons for the stricter conditions or an opportunity to challenge them. *See Palacio*, 2025 WL 4033287, at *3 ("This Court finds that the government's interest in imposing an ankle monitor without a pre-deprivation hearing or any other procedure is low") (citing *Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025)). As stated, Respondents do not identify what facts were considered in imposing the new conditions, or what process, if any, preceded that decision.

Accordingly, while the Government maintains a substantial interest in enforcing the immigration laws generally, Respondents have little, if any, legitimate interest in imposing significantly stricter conditions of supervision without the provision of any procedural safeguards or even revealing the existence of such safeguards. *See, e.g.*, *Kumar v. Noem*, No. 2:26-CV-00239-TLF, 2026 WL 411833, at *3 (W.D. Wash. Feb. 13, 2026) ("The Court thus finds the arbitrary placement of a GPS monitor, without sufficient evidence of a danger to the community or a flight risk, would violate due process."); *Singh v. Noem*, No. C26-0302JLR, 2026 WL 879247, at *5 (W.D. Wash. Mar. 31, 2026) (same); *Chicoze-Ezechi v. Noem*, No. 2:26-CV-00145-BAT, 2026 WL 265733, at *2 (W.D. Wash. Feb. 2, 2026) (same). Thus, the third *Mathews* factor does not favor Respondents and weighs neutrally on Petitioner.

Taken together, the *Mathews* factors demonstrate that the process afforded to Petitioner was constitutionally deficient. The Court therefore concludes that Respondents' imposition of stricter restraints on her movement as conditions of Petitioner's release without individualized review, notice of the justifications for the conditions, or a meaningful opportunity to be heard and challenge her current custody arrangement violates due process.

## IV. REMEDY

As set forth above, Petitioner seeks two forms of relief. The Court will address both requests.

### A. Conditional Release

Having determined that Petitioner is subject to strict release conditions without the constitutionally required process, the Court now determines the appropriate remedy for her unlawful restraint. Petitioner seeks an order requiring Respondents to restore her conditions of release to those imposed prior to her July 6, 2026, detention. Dkt. 11 at 25.

Where a petitioner was detained without notice or a pre-deprivation hearing in violation of due process, the detention is "unlawful from its inception and typically requires immediate release." *K.G.M.Q. v. Bondi*, No. 2:26-cv-00506-TL, 2026 WL 962609, at *12 (W.D. Wash. Apr. 9, 2026*)*. In this case, Petitioner has been released, but such release was accompanied by conditions significantly stricter than those imposed upon her prior to her re-detention. Having found a due process violation in connection with Petitioner's re-detention, the Court now finds the proper remedy is to return her to the conditions of supervision in place prior to her illegal re-detention. *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante— that is, to return [the petitioner] to

the conditions that existed before his unlawful detention.") (emphasis in original); *Palacio*, 2025 WL 4033287, at *3.

Accordingly, the Court **GRANTS** Petitioner's request for a conditional writ requiring her **IMMEDIATE RELEASE** from certain conditions of supervision **UNLESS and UNTIL** Respondents provide her with notice and an opportunity to be heard as outlined in the conclusion below.

**B. Third Country Removal**

Petitioner also seeks an order requiring Respondents to reopen removal proceedings and provide notice and an opportunity to be heard before removing or attempting to remove her to a third country. Dkt. 11 at 24–25. Additionally, Petitioner requests an Order prohibiting Respondents from removing Petitioner to any third country where it is more likely than not that she will be subsequently repatriated to Sierra Leone. *Id*. In response, Respondents repeatedly state that Petitioner does not face imminent removal (*see* Dkt. 16 at 2, 3, 5), but confirm that Petitioner has been approved for third-country removal supported by credible diplomatic assurances. Dkt. 16 at 7–9.

As Petitioner has been granted withholding of removal from her home-country of Sierra Leone, the only remaining lawful removal of Petitioner would be to a third country. "A number of courts in this district have recently addressed challenges to ICE's current third-country removal policy and have concluded that the policy violates due process." *Machuca Del Cid v. Mullin*, No. C26-1271-SKV, 2026 WL 1295891, at *5 (W.D. Wash. May 12, 2026) (collecting cases); *see also Rea-Hernandez v. Bondi*, No. C25-2609, 2026 WL 322874, at *9 (W.D. Wash. Feb. 6, 2026) ("Alarmingly, this policy provides that "[i]f the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United

States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed without the need for further procedures."); *Francisco Lorenzo v. Bondi*, No. C25-2660, 2026 WL 237501, at *9–10 (W.D. Wash. Jan. 29, 2026) (finding that Respondents' third-country removal policy, as described in the July 9, 2025, memorandum, "simply do[es] not comport with due process"); *Escobar v. Chestnut*, No. C25-1801, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025) ("Courts across this circuit have found that ICE's policy, as described in the March and July Memoranda, is likely unconstitutional and contrary to Ninth Circuit precedent." (collecting cases)).

Given the speed at which third-country removal can be executed once the government decides to employ its policy, courts consider requests to enjoin third-country removal to be nonspeculative and ripe for adjudication even without evidence of active intent to pursue such removal for a particular noncitizen. *See, e.g.*, *Savinsky v. Bondi*, No. 2:26-CV-00835-TL, 2026 WL 1191017, at *11 (W.D. Wash. May 1, 2026) (enjoining third-country removal without notice or process and rejecting the Government's argument that "[t]here is no indication at this time that ICE is seeking to remove Petitioner to a third country.").

Central to these decisions are concerns that, under the current policy, a noncitizen could be identified for removal to a third country and swiftly removed without the "chance to express a reasonable fear of persecution or torture or seek judicial intervention" in clear violation of the United States Constitution. *Le v. Bondi*, No. 25-cv-2454-KKE, 2026 WL 309239, at *7 (W.D. Wash. Feb. 5, 2026); *see also Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1071 (W.D. Wash. 2025) ("Where alleged harm 'is directly traceable to a written policy . . . there is an implicit likelihood of its repetition in the immediate future.'") (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007)); *but see Edin v. Blanche*, No. C26-1208-MLP, 2026 WL

1256141, at *6 (W.D. Wash. May 7, 2026) (denying request for injunctive relief as unripe absent individualized evidence suggesting a noncitizen's removal to third country is imminent).

Upon review of the record in this case, the Court finds that the government may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with 8 U.S.C. § 1231(b) and the Due Process Clause. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar*, 817 F. Supp. 3d at 1065 (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings").

To comply with due process, the government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Aden*, 409 F. Supp. 3d at 1019. The INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). Multiple courts in this District have held that, if a noncitizen claims fear of removal to a designated third country, the government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. *Aden*, 409 F. Supp. 3d at 1011; *Baltodano v. Bondi*, C25-1958-RSL, 2025 WL 2987766, at *3–4 (W.D. Wash. Dec. 4, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 739 (W.D. Wash. 2025).

Should the government take steps to remove Petitioner to a third country, it must provide her with written notice of its intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *Nguyen*, 796 F.

Supp. 3d at 727 ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F. Supp. 3d at 1010–11).

Accordingly, the Court **GRANTS** Petitioner's request for prospective injunctive relief related to her future third-country removal as set forth in the conclusion below.

## V. CONCLUSION

For the foregoing reasons, Petitioner's Amended Petition (Dkt. 11) is **GRANTED** and the Court **ORDERS** the following:

(1) Respondents **SHALL immediately** release Petitioner H.J. on the conditions as applied to her **BEFORE** Petitioner's July 6, 2026, arrest and detention;

(2) Respondents **SHALL NOT IMPOSE** new conditions on Petitioner **UNLESS** and **UNTIL** Petitioner is provided notice of the reasons for the conditions and an opportunity to challenge those conditions before an immigration judge;

(3) Respondents **SHALL** file a declaration with the Court confirming compliance with the above requirements **within eight (8) days of this Order**; and

(4) Respondents **SHALL NOT** remove Petitioner without notice and a meaningful opportunity to be heard in reopened removal proceedings as required by the INA, implementing regulations, and the United States Constitution.

//

//

Further, the Motion for Temporary Restraining Order (Dkt. 2) is **DEEMED MOOT**.

Finally, the Court will entertain post-judgment requests for attorney's fees. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 21st day of September, 2026.

Grady J. Leupold
United States Magistrate Judge